UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

Anthony Joseph Besett et al,                    Civil No. 10-CV-934 (JRT/LIB)

           Plaintiffs,

v.                                              **REPORT AND RECOMMENDATION**

Wadena County et al,

           Defendants,

---

      This matter came before the undersigned United States Magistrate Judge upon Defendants Shawn Alvin Hegg and Jennifer Katherine Hegg's Motion for Summary Judgment. The motion has been referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1.  For the reasons outlined below, the Court recommends that Defendants' Motion for Summary Judgment be granted.

## I.      BACKGROUND

      This lawsuit arises out of assertedly false allegations of sexual abuse that were advanced against Plaintiff Anthony Besett in January of 2009.  The minor child in question, who will be referred to herein as L.H., is the son of Plaintiff Tiffany Hegg and Defendant Shawn Hegg, who were divorced in 2005.  Tiffany Hegg cohabitates with Anthony Besett, with whom she has two children.  Defendant Shawn Hegg was later remarried to Defendant Jennifer Hegg (collectively, the Hegg Defendants).  In the divorce, Defendant Shawn Hegg was awarded physical custody of L.H. and his older brother Z.H., subject to Tiffany's right to parenting time.

On December 7, 2010, the undersigned issued a report and recommendation recommending that Plaintiffs be allowed to amend their Complaint to assert several new claims and that various claims against various Defendants be dismissed.  (See Docket No. 69).  On December 15, 2011, upon the parties' stipulation, the Court issued an order dismissing all claims against Defendants Wadena County, Wadena County Sheriff's Department, William Cross, Paul Sailer, Jane Erckenbrack, Karen Johnson, Hubbard County, Daryl Bessler, Toni Carlstrom and Rande Woodrum.  (See Docket No. 114).  Then, on December 20, 2011, the Clerk of Court entered judgment in favor of Plaintiffs for $5,000 against Defendants Larry Ellingson, Monica McConkey, and Natascha Smrekar.  (See Docket No. 116).

The only Defendants that presently remain in this suit are Shawn Hegg and Jennifer Hegg.  The only claims that remain against these two defendants are: 1) Defamation (Ninth Claim for Relief); 2) Knowing and Reckless False Reporting in Violation of Minn. Stat. § 626.556, subd. 5 (Eleventh Claim for Relief); and 3) Negligent Infliction of Physical and Emotional Distress (Twelfth Claim for Relief).  (Second Am. Compl. [Docket No. 82] ¶¶ 201-22, 237-52, 253-59).

## II.      STANDARD OF REVIEW

Summary Judgment is appropriate when the evidence demonstrates that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. Pro. 56(a); Smutka v. City of Hutchinson, 451 F.3d 522, 526 (8th Cir. 2006).  A disputed fact is "material" if it might affect the outcome of the case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the burden of bringing forward sufficient admissible evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The evidence must be viewed in the light most favorable to the nonmoving party, and the nonmoving party must be given the benefit of all reasonable inferences to be drawn from the underlying facts in the record.  Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp., 950 F.2d 566, 569 (8th Cir. 1991).  However, the nonmoving party may not rest on mere allegations or denials in its pleadings, but must set forth specific admissible evidence-based facts showing the existence of a genuine issue.  Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002).  The movant is entitled to summary judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.  No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

## III.   DISCUSSION

Before addressing the motion for summary judgment, the Court must first address the question of jurisdiction raised by Defendants.  In the last paragraph of their memorandum in support of their motion for summary judgment, Defendants provide that although they "would strongly prefer that this Court dismiss Plaintiffs' complaint on the merits," the Court could also "dismiss the case for lack of subject matter jurisdiction."  (Defs.' Mem. of Law in Supp. of Mot. for Summ. J. [Docket No. 121] at 16).  Defendants provide that all of the federal claims in this suit have been dismissed and that only the pendant state law claims against the Hegg Defendants

remain.  (Id.)  They assert that if the Court declines to dismiss the claims on the merits, it should in any event decline to exercise supplemental jurisdiction.

Plaintiffs argue that the Court already made the decision to retain supplemental jurisdiction.  In support, Plaintiffs cite to a letter to the Honorable John R. Tunheim, in which they requested guidance on whether the Court would be willing to exercise jurisdiction over the state law claims and retain the case, and an email response by Holly McLelland, Judge Tunheim's calendar clerk, that "Judge Tunheim has reviewed the letter submitted by plaintiffs and has indicated that he will be keeping this case."  (Aff. of Attorney Brian D. Chmielewski [Docket No. 125], Ex. 3 at 10).  In their reply, Defendants argue that "[t]he Court neither issued an order nor made a docket entry regarding jurisdiction."  (Defs. Shawn and Jennifer Hegg's Reply Mem. [Docket No. 127] at 19).

"The Court has broad discretion in deciding whether to continue hearing state claims following dismissal of federal claims."  Shimer v. Shingobee Island Water and Sewer Com'n, No. 02-953 (JRT/FLN), 2003 WL 1610788, at *8 (D. Minn. Mar. 18, 2003) (explaining that "[w]hen a case has been properly removed to the federal district court, this Court is reluctant to remand the case back to state court after hearing and resolving dispositive motions.").  "In determining whether to exercise supplemental jurisdiction, courts consider factors such as judicial efficiency, convenience, and fairness to the litigants."  Hylla v. Transp. Commc'n Int'l Union, No. 06-4700 (JRT/RLE), 2007 WL 2892021, at *4 (D. Minn. Sept. 28, 2007).  It appears that Judge Tunheim has already decided the issue, though, perhaps, not in the form of a typical formal written order.  Even if Judge Tunheim's "indication" was not a formal order, the undersigned believes that because previous dispositive motions have already been heard in the case and it has been more than two years since the complaint was filed, with many of the similar

claims against other parties resolved in his forum, the Court should exercise its supplemental jurisdiction over the remaining state law claims.  Thus, to the extent Defendants continue to argue that the Court should not exercise supplemental jurisdiction over the remaining pendant state law claims, the undersigned recommends that the Court retain jurisdiction over the state law claims.

Having addressed the question of jurisdiction, the Court proceeds to the merits of Defendants' motion.

### A.  Plaintiffs' claim for defamation

In Plaintiffs' initial complaint, the defamation claim against the Hegg Defendants alleged that "Defendants communicated false statements specifically alleging it was a fact that Anthony was engaged in criminal activity, to wit, sexual assault of a child . . . when defendants spoke and wrote them to LaPorte Elementary School, WCSS, HCSS and WCSD on multiple occasions." (Compl. [Docket No. 1] ¶ 174).  Plaintiff failed to initially allege when these multiple defamations took place.  As part of their proposed amended complaint, Plaintiffs' made the following allegations in their defamation claim:

> On or about January 7, 2009, Jennifer Hegg told a third party, Natascha Smrekar, that Besett sexually assaulted L.H. Jennifer had no reasonable believe that the story was accurate when she slandered Besett.

> On or about January 9, 2009, when Defendants learned that L.H. had not communicated information that convinced Smrekar that sexual abuse had occurred, Jennifer contacted Smrekar and repeated the fabricated story to her and assisted Smrekar in drafting a written report based on her slander.  Jennifer had no reasonable believe that the story was accurate when she slandered and assisted in libeling Besett.

> Defendants have repeated their false and derogatory statements to others and continue to repeat their false and derogatory statements to others in an attempt to further ridicule and disparage Plaintiffs.

> Defendants communicated false statements specifically alleging it was a fact that
> Anthony was engaged in criminal activity, to wit, sexual assault of a child . . .
> knowing them to be false or with reckless disregard for the truth of the statements
> when Defendants spoke and wrote them to LaPorte Elementary School, WCSS,
> HCSS and WCSD on multiple occasions.

(Redline Version of Am. Compl. [Docket No. 34, Ex.1] ¶¶ 211, 215, 220, 224).  Although

Plaintiffs asserted that Defendants "sometime prior to January 9, 2009 developed a story to

advance their personal scheme to totally alienate Plaintiffs, terminate Tiffany's parental rights

and obtain sole custody of Z.H. and L.H.," they made no specific allegations in their defamation

claim that any defamations took place prior to January 7, 2009.  (See id. ¶ 210).

Before considering, in the context of a futility argument, whether Plaintiffs proposed

allegations could survive a motion to dismiss, the Court advised and cautioned Plaintiffs

regarding the sufficiency of their pleadings:

> The Court also notes that it has been required to expend significant resources
> reviewing Plaintiffs' pleading, which is unwieldy and sometimes difficult to
> comprehend. When faced with the pending motions to dismiss, Plaintiffs
> apparently did not heed Rule 8's direction to provide a "short and plain
> statement" of their claims, and instead added a slew of unnecessary information,
> making the pleading perhaps even more unwieldy. Many resources could have
> been saved had Plaintiffs simply stated the legal basis of their claims, and the
> factual allegations in support, in a concise and direct manner.

(Report and Recommendation [Docket No. 69] at 11).  The Court's admonition was not a mere

insistence upon formality, as the lack of clarity embedded in Plaintiffs' filings now presents a

real dispute between the parties as to the scope of Plaintiffs' claims for defamation.  In their

memorandum in support of the motion, Defendants addressed only the alleged communications

occurring on January 7, 2009 and January 9, 2009 as possible claims for defamation.  (See Defs.'

Mem. of Law in Supp. of Mot. for Summ. J. [Docket No. 121]).  In their memorandum in

response to the motion, Plaintiffs provided a seventeen-page historical timeline of various

alleged communications between Plaintiffs and Defendants dating back to November of 2004. (Pls.' Resp. in Opp'n to Defs.' Mot. for Summ. J. [Docket No. 124] at 2-18). Plaintiffs appeared, in their written submission, to treat these pre-January 7, 2009 events as independent basis of defamation. (See id. at 23) (arguing that Defendant Jennifer Hegg made "false reports of abuse against Besett to social services on January 16, 2007 and September 11, 2007 [and that] [t]he Heggs made these communications in person and over the phone, at the LaPorte School, from their home, at the law enforcement center, in courtrooms and other locations."); (id. at 25) (arguing that dozens of letters sent in 2005 and later included "defamatory language" and were jointly published by Defendants). In the reply, Defendants specifically objected to any consideration of defamation claims beyond the claims that Defendants defamed Plaintiff Besett to Ms. Smrekar on January 7 and January 9, 2012. (Defs. Shawn and Jennifer Hegg's Reply Mem. of Law in Supp. of Mot. for Summ. J. [Docket No. 127] at 2).

In deciding Plaintiffs' motion to amend the complaint, and in finding that Plaintiffs' claim for defamation was not futile, the Court's holding was clearly limited to events occurring on and after January 7, 2009:

> Plaintiffs allege that the Hegg Defendants knowingly fabricated allegations that Besett sexually abused L.H. – namely, that Besett got undressed, laid on L.H.'s bed, and asked L.H. to touch his genitals. (Second Am. Compl., at ¶s **210-211**). Plaintiffs further allege that **Jennifer communicated these fabricated allegations to Smrekar**, and that the Hegg Defendants continued to repeat **these** false allegations to others in their community. (Id. at ¶s 214-224). The Court finds that Plaintiffs' proposed amendments to their defamation claim are not futile. Here, Plaintiffs have adequately alleged that the statements were communicated to someone other than the Plaintiffs **when they were disclosed to Smrekar**.

(Report and Recommendation at 12) (emphasis added).[1]  The Court, in a footnote, also permitted Plaintiff to "assert additional **factual** allegations relative to any of their claims" because they were not opposed.  (Id. at 13 n.2) (emphasis added).  Because no allegations were made to the Court for any possible defamatory **claims** prior to January 7, 2009, the Court could not have considered them as new defamatory claims in providing its recommendation, and thus, they could not have been part of its analysis such that they could withstand a motion to dismiss.  See Chenvert v. DeJohn, 2000 WL 1728257, at *21 (D. Del. Apr. 11, 2000) ("[i]t is essential for Plaintiff to identify the defamatory communication, otherwise, it is impossible to know whether the communication gives rise to a cause of action . . . ." (quoting Layfield v. Beebe Med. Ctr., Inc., 1997 WL 716900 (Del. Super. Jul. 18, 1997))).  Minnesota law requires that "a claim for defamation must be pled with a certain degree of specificity."  Schibursky v. International Bus. Machs. Co., 820 F. Supp. 1169, 1181 (D. Minn. 1993).  At the very least, the plaintiff must "'allege who made the allegedly libelous statements, to whom they were made, and where.'"  Id. (quoting Pinto v. Internationale Set, Inc., 650 F. Supp. 306, 309 (D. Minn. 1986)).  Plaintiffs failed to do so for any defamation claims other than those based on the alleged defamation to Ms. Smrekar on January 7 and January 9, 2009 and the allegation that Defendants repeated those defamatory statements at a later time.

Upon the Court's inquiry as to whether the January 7 and January 9, 2012 incidents were the basis for the defamation claim, Plaintiffs' counsel represented that those were the "primary defamations."  Although Plaintiffs appeared to concede at the hearing, and did not argue to the contrary, that their defamation claims are based on events transpiring after January 7, 2009, for the sake of clarity, the Court notes that any events prior to January 7, 2009 cannot serve as a

---

[1] Paragraphs 210 and 211 referenced by the Court are now paragraphs 202 and 203 in the Amended Complaint found at Docket No. 82, after the paragraphs were shifted up by 8 numbers when one of the proposed amendments was denied.

basis for an independent defamation claim.  See Williams v. Bradley, 352 Fed. Appx. 133, 134

(8th Cir. 2009) ("[w]e also find that the district court properly limited its consideration to those

claims that Williams raised in his third amended complaint, which he filed through appointed

counsel.").  As such, the Court only considers the communications after January 7, 2009 as the

possible basis for a defamation claim.

### 1. Plaintiffs' claim that Defendants defamed Plaintiffs when speaking with Ms. Natascha Smrekar

Plaintiffs allege that "[o]n or about January 7, 2009, Jennifer Hegg told a third party,

Natascha Smrekar, that Besett sexually assaulted L.H" and that "[o]n or about January 9, 2009 . .

. Jennifer contacted Smrekar and repeated the fabricated story to her and assisted Smrekar in

drafting a written report based on her slander."  (Second Am. Compl. [Docket No. 82] ¶¶ 203,

207).

"In order for a statement to be considered defamatory it must be communicated to

someone other than the plaintiff, it must be false, and it must tend to harm the plaintiff's

reputation and to lower him in the estimation of the community."  Stuempges v. Parke, Davis &

Co., 297 N.W.2d 252, 255 (Minn. 1980).

Defendants argue that Jennifer Hegg made no statement on January 7, 2009 or January 9,

2009 to Ms. Smrekar that Plaintiff Besett sexually assaulted L.H.  (Defs.' Mem. of Law in Supp.

of Mot. for Summ. J. [Docket No. 121] at 8-9).

In her deposition, Defendant Jennifer Hegg testified that she "didn't make a report to

Smrekar," that she "didn't ever tell Miss Smrekar what was going on," and that when she spoke

to Ms. Smrekar on January 7, 2009, she merely told Ms. Smrekar that L.H "had told [her and

Defendant Shawn Hegg] something that [they] were very worried about and [they] were

wondering if she could talk to [L.H.]." (Jennifer Hegg Dep. 138:22; 140:14-25, October 28,

2011 [Docket No. 122, Ex. 1 at 4]).  Furthermore, Defendant Jennifer Hegg testified that on

January 9, 2009, L.H. made the report to Ms. Smrekar that Plaintiff Besett sexually assaulted

him.  (Id. 138:23-24; 143:7-16).  In his deposition, Plaintiff Besett admitted that he did not have

knowledge of what L.H. did or did not say to Ms. Smrekar.  (Besett Dep. 383:7-10, September

28, 2012 [Docket No. 122, Ex. 1 at 13]).  In her deposition, Plaintiff Tiffany Hegg likewise

acknowledged that she did not know what L.H. told Ms. Smrekar.  (Tiffany Hegg Dep. 192:17-

21, September 28, 2011 [Docket No. 122, Ex. 1 at 21]).  In her requests for admissions, Mr.

Smrekar denied that "L.H. did not make any direct statement on January 9, 2009 . . . that he was

sexually assaulted by Plaintiff Besett." (Responses to Requests for Admission [Docket No. 122],

Ex. 1 at 23).  Ms. Smrekar's responses to interrogatories likewise provide that L.H.—not

Defendant Jennifer Hegg—made the report of sexual abuse.  (Natascha Smrekar's Answers to

Pls.' Interrogatories [Docket No. 128], Ex. 1 at 5, 6, 7) ("On January 9, 2009, L.H. reported to

Smrekar that Anthony Besett sexually abused him."); ("L.H. directly reported sexual abuse.");

("L.H. (not Jennifer Hegg) directly reported sexual abuse at the hands of Anthony Besett to

Natasha Smrekar.").

Furthermore, contrary to Plaintiffs' argument that a copy of the actual report made by

Ms. Smrekar, [2] even if considered, reveals that L.H.—not Defendant Jennifer Hegg—disclosed

---

[2] The Court finds this report inadmissible.  Neither party discussed the admissibility of the report purportedly made by Ms. Smrekar.  Indeed, Plaintiffs and Defendants' counsels included it in their affidavits in support of the motion. The report itself is hearsay and neither party has sought to authenticate the report by deposition testimony from Ms. Smrekar—though Plaintiffs' counsel acknowledged that he had the opportunity to depose Ms. Smrekar.  The report included by both Plaintiffs and Defendants is marked as an exhibit from Plaintiff Besett's deposition.  In the testimony record provided to the Court, however, the testimony from Mr. Besett is insufficient to authenticate the report.  (Besett Dep. 381:19-384:3, September 28, 2011 [Docket No. 122, Ex. 1 at 13]) (stating that he can't answer the question of whether the document was a written report of the oral report from L.H. regarding sexual abuse). Furthermore, there is no evidence in the record as to why Mr. Besett would have personal knowledge of the report, as he was not present during its making.  Defendant Jennifer Hegg, in her deposition stated that she did not recognize the document.  (Jennifer Hegg Dep. 150:4-7, October 27, 2011 [Docket No. 122, Ex. 1 at 7]).  Mr.

the alleged sexual abuse to Ms. Smrekar.  (Aff. of Brian D. Chmielewski [Docket No. 125], Ex.

6 at 23).  When describing the circumstances of the incident at issue, Ms. Smrekar reported that:

> [L.H.] disclosed that his mother's boyfriend Anthony exposed his genitals to
> [L.H.] and asked him to "hold his boys." [L.H.] stated this happened on his last
> visit to his mom's house.  He said he was playing X-box 360 and Anthony told
> him to come into the bedroom for a surprise. He said Anthony did a song and
> danced for him "like a girl." He said Anthony had him lay on the bed. He said
> Anthony took his clothes off. Anthony told [L.H.] to "hold his boys." [L.H.] said
> he did not touch Anthony and Anthony did not touch him. [L.H.] said he never
> had his own clothes off. He said he left the room and told his mom. He said his
> mom told Anthony to never do that again. Anthony lives with the mother, Tiffany
> Hegg. Anthony Besett is the boyfriend.

(Id.)[3]  As provided in the four corners of the report, the statements pertaining to the underlying

alleged incident of sexual abuse by Plaintiff were made by L.H., not Defendant Jennifer Hegg.[4]

In their memorandum addressing their defamation claim, Plaintiffs fail to cite to any

direct evidence in the record to create a genuine issue of material fact as to whether Defendant

Jennifer Hegg told Ms. Smrekar that Plaintiff sexually abused L.H.  Instead, though not

---

Chmielewski's representation in his affidavit that the attached copy is a true and correct copy of the report, (see Aff.
of Brian D. Chmielewski ¶ 16), is insufficient to overcome the issue of authentication and hearsay; thus, the Court finds
that it is inadmissible. See United States v. Dibble, 429 F.2d 598, 602 (9th Cir. 1970) ("A writing is not
authenticated simply by attaching it to an affidavit, even if the writing appears on its face to have originated from
some governmental agency and the affiant is a government official. The foundation is laid for receiving a document
in evidence by the testimony of a witness with personal knowledge of the facts who attests to the identity and due
execution of the document and, where appropriate, its delivery.").

[3] The report also included a section captioned "[i]nformation concerning previous reports of abuse or conditions of
neglect of this child or other children in this family," in which Ms. Smrekar provided that Defendant Jennifer Hegg
"reported several other disclosures made by L.H."  (Aff. of Brian D. Chmielewski [Docket No. 125], Ex. 6 at 23).
There is no indication in the record that this statement in any way related to the sexual abuse incident at issue in this
case, that it related to sexual abuse at all, or that it even related to Plaintiffs in any way.  Thus, it could not be a basis
for a defamatory statement made by Defendants against Plaintiffs.  Moreover, despite all of the other numerous
statements Plaintiffs believe were defamatory, Plaintiffs did not argue in their written memorandum that the
statements in this section of Ms. Smrekar's report were defamatory and, thus, any such claim has been waived.
F.T.C. v. Neiswonger, 580 F.3d 769, 775 (8th Cir. 2009) ("[c]laims not raised in an opening brief are deemed
waived." (internal quotation marks omitted)); United States v. Peacock, 256 Fed. Appx. 9 (8th Cir. 2007) ("an
argument not raised in an opening brief is considered waived.").

[4] At the hearing, Plaintiffs made a motion to supplement the record with an additional document titled "Stellher
Human Services General Intake Form."  Defendants objected to the motion.  When the Court inquired what
foundation Plaintiffs could provide as to the document, Plaintiffs' counsel merely argued that it was the same
writing that was seen in the other report purportedly made by Ms. Smrekar.  However, Plaintiffs' counsel introduced
no evidence that he is sufficiently trained as a handwriting expert or that he had intimate knowledge of Ms.
Smrekar's handwriting.  The Court finds that the document is hearsay and that Plaintiffs' have failed to lay the
necessary foundation to authenticate the document; thus, it denies the motion to supplement the record with the
document.

explicitly, they appear to argue that circumstantial evidence necessarily supports their claim.[5]
(See Pls.' Resp. in Opp'n to Defs.' Mot. for Summ. J. at 23); (see also Pls.' Resp. in Opp'n to
Defs.' Mot. for Summ. J. at 29) (arguing that facts may be proven by circumstantial evidence and
that circumstantial evidence shows that Defendant Jennifer Hegg made a sexual abuse report to
Ms. Smrekar).  Plaintiffs are correct that, generally, "[a] fact need not be established by direct
evidence, but may be competently established by adequate circumstantial evidence." Northern
States Power Co. v. Lyon Food Prods., Inc., 229 N.W.2d 521, 525 (Minn. 1975); see also
Herrmann v. ExpressJet Airlines, Inc., No. 08-977 (RHK/JJK), 2009 WL 1244052, at *7 (D.
Minn. May 5, 2009) (finding that the plaintiff had "proffered sufficient circumstantial evidence,
albeit barely, to survive summary judgment").  Circumstantial evidence, however, "cannot create
a genuine issue of material fact if a key inference is left to conjecture and speculation . . . ."
Group Health Plan, Inc. v. Philip Morris Inc., 188 F. Supp.2d 1122, 1130 (D. Minn. 2002).

 When considering a summary judgment motion for a defamation claim based on state
law, the Court applies the substantive law of the state but the summary judgment standard
provided in Fed. R. Civ. P. 56.  See Lavin v. New York News, Inc., 757 F.2d 1416, 1419 (3d Cir.
1985).  Aside from Plaintiffs' citation to Northern States Power Co., Plaintiffs fail to present any
authority that circumstantial evidence is sufficient to survive a summary judgment motion for a
defamation claim.  In the context of the publication of a defamatory statement, Minnesota courts
have not explicitly determined whether the plaintiff may merely rely on circumstantial evidence
or whether direct evidence that the defamatory statement was made must be shown—though, the
Minnesota Court of Appeals has suggested that direct evidence is required.  See Lindgren v.
Harmon Glass Co., 489 N.W.2d 804, 811 (Minn. Ct. App. 1992) ("Lindgren has failed to present
any facts to support a claim Harmon Glass **directly** defamed her. Lindgren admitted she had **no**

---

[5] This observation is consistent with Plaintiffs' counsel's argument during the motion hearing.

**knowledge of any statements made** by Harmon Glass to individuals either inside or outside the company. While she **speculates** that such statements **may have been made** because two of her former co-workers knew about her termination before she did, **such speculation is insufficient** to support a claim of defamation." (emphasis added).

The Court need not decide here whether Minnesota law permits a defamation claim to survive summary judgment based on circumstantial evidence of publication alone because the Court finds that even if Minnesota courts permitted a defamation claim to stand only on circumstantial evidence of publication, Plaintiff has failed to produce such evidence in this case.

Here, Plaintiff appears to argue that the following circumstantial evidence demonstrates that Defendant Jennifer Hegg told Ms. Smrekar that Plaintiff Besett sexually assaulted L.H.: 1) "Jennifer's presence with L.H. when the alleged abuse allegation was make [sic] to Smrekar"; 2) "the inability of L.H. to make the same report without being lead"; and 3) "eight years of paper trail demonstrating the Heggs' attempts to alienate the kids from the Plaintiffs and the ever-increasing intensity of their attacks on both Plaintiffs." (Pls.' Resp. in Opp'n to Defs.' Mot. for Summ. J. at 23). The Court disagrees.

In the face of the direct evidence from the only parties present at the January 9, 2009 meeting to show that L.H. himself made the report of sexual abuse to Ms. Smrekar, Plaintiffs cannot merely rely on the circumstantial fact that Defendant Jennifer Hegg was present at the time L.H. disclosed the sexual abuse to Ms. Smrekar and that some intra-family turmoil existed after the divorce between Plaintiff Tiffany Hegg and Defendant Shawn Hegg. Plaintiffs essentially assert that because they believe Defendant Jennifer Hegg may have made defamatory statements in the past, then she must have also defamed Plaintiffs to Ms. Smrekar on January 9, 2009. Such speculative reasoning was rejected in <u>Lindgren</u>, and the Court concludes that such

13

an assertion requires sheer speculation and is not "nearly sufficient . . . to survive a motion for

summary judgment." See Manhattan Group, LLC v. Rizer, 2001 WL 1402693, at *2 (Minn. Ct.

App. 2001) ("The circumstantial evidence developed by Manhattan supports the inference that

Rizer had the **motive and opportunity** to provide confidential information to Gatacre and to

participate with Gatacre in the launch of a competing business. It falls short, however, of

supporting the inference that Rizer **actually did** either." (emphasis added)).

Plaintiffs also argue that L.H.'s inability to later repeat the content of his apparent

January 9, 2009 report to Ms. Smrekar is sufficient circumstantial evidence of Defendant

Jennifer Hegg's publication of a defamatory assertion about Plaintiff to survive summary

judgment.  Plaintiffs have failed to cite any admissible evidence to support this argument.

Presumably, though the Court cannot be sure because Plaintiffs failed to cite to the record,

Plaintiffs are referring to a document labeled as "Interview of [L.H.] Hegg 1/12/09" found in Mr.

Chmielewski's affidavit filed in opposition to the motion.  (See Aff. of Brian D. Chmielewski

[Docket No. 125], Ex. 6 at 26 – Ex. 7 at 11).  Aside from Mr. Chmielewski's representation that

the exhibit is "a true and correct copy of the transcript of the January 12, 2009 audio-recorded

interview of L.H.," (see Aff. of Brian D. Chmielewski [Docket No. 125] ¶ 29), there is no

evidence or testimony in the record to verify the authenticity of the document.  As such, the

document is not admissible evidence which can create a genuine issue of material fact.  See Orr

v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002) (excluding excerpts of trial

transcripts submitted as part of the attorney's affidavit, even though it stated that they were "true

and correct copies" because they lacked foundation "even if he were present when the witnesses

testified at the [] trial"); Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1182 (9th Cir.

1988) (explaining that a document labeled as testimony from an unrelated trial was inadmissible,

even though the affiant attorney stated that it was a true and correct copy, because the document

was not a certified copy of a transcript and the attorney's declaration failed to lay an adequate

foundation); Steven v. Roscoe Turner Aeronautical Corp., 324 F.2d 157, 161 (7th Cir. 1963) ("an

uncertified copy of testimony is inadmissible in a summary judgment proceeding."). Even if the

transcript Plaintiffs' counsel appears to point to were admissible, however, the Court does not

believe that L.H.'s apparent inability to make the same report with the same level of specificity

at a later time is alone sufficient evidence to show that Defendant Jennifer Hegg made any

defamatory statement at an earlier time.[6]

Despite the Court's previous admonition about including a "slew of unnecessary

information" that would make Plaintiffs' pleadings more unwieldy, in their memorandum in

---

[6] Plaintiffs' argument that the opinion of their purported expert witness demonstrates that L.H. did not make the report is likewise unpersuasive. Plaintiffs argue that the expert concluded that the "January 9, 2009 report most certainly was based on information that [Ms. Smrekar] received from Jennifer Hegg, since there was nothing remotely resembling the subject matter from her January 7, 2009 notes upon interviewing L.H." (Pls.' Resp. in Opp'n to Defs. Shawn and Jennifer Hegg's Mot. for Summ. J. at 41-42). First, Hollida Wakefield's expert's analysis and opinion were not centered on giving an opinion of who made the sexual abuse report but, rather, on whether the investigation procedures of Ms. Smrekar and others fell below the generally accepted standards in the community. (Decl. of Hollida Wakefield [Docket No. 125], Ex. 3 at 22) ("I examined whether the behaviors of the defendants departed from the generally accepted standards of care in the professional community, which have developed out of research in the above areas. I further examined whether their departures from the generally accepted standards, were so extreme as to be considered negligent."). Second, because Ms. Smrekar has already sworn that L.H., not Defendant Jennifer Hegg, made the report, Ms. Wakefield's opinion that the report was made by Jennifer Hegg essentially seeks to establish that a witness is not telling the truth, which the Court finds to be improper in this instance. See United States v. Benally, 541 F.3d 990, 994-95 (10th Cir. 2008) ("the credibility of witnesses is generally not an appropriate subject for expert testimony . . . [and] expert testimony which does nothing but vouch for the credibility of another witness encroaches upon the jury's vital and exclusive function to make credibility determinations, and therefore does not assist the trier of fact as required by Rule 702. Also, a proposed expert's opinion that a witness is lying or telling the truth might be inadmissible pursuant to Rule 702 because the opinion exceeds the scope of the expert's specialized knowledge and therefore merely informs the jury that it should reach a particular outcome."). At best, Ms. Wakefield's opinion may be relevant to demonstrate that L.H.'s memory of the event has been affected by conversations he's had with others, but this is not the relevant question before the Court. Nor is the relevant question whether Plaintiff Besett actually sexually abused L.H. Instead, the question is whether Jennifer Hegg made the statement to Ms. Smrekar that Plaintiff Besett sexually assaulted L.H.—to this question, Ms. Wakefield's opinion is not determinative. Moreover, it is not entirely clear that Ms. Wakefield even gave an ultimate opinion on whether Jennifer Hegg made the report. (See id., Ex. 4 at 3) ("**If** the report was based on what Jennifer Hegg said rather than what L.H. said in her interview with him, she should have disclosed this to Donovan D. Dearstyne so he wouldn't have been put in the position of making a false declaration to the court." (emphasis added)). Likewise, Ms. Jane K. McNaught, Plaintiffs' other expert, made no conclusion that Jennifer Hegg made the report of sexual abuse and specifically stated that further information was necessary to determine if Ms. Smrekar had knowledge from Jennifer Hegg that sexual abuse occurred. (Id. at 12-13).

opposition to the motion, rather than simply stating the alleged defamation and citing to facts in the record supporting their claim, Plaintiffs made blurred and cumulative arguments on communications spanning several years outside those pled in the Amended Complaint to argue that a defamation claim probably exists.  "The Court need not sift through the record to locate evidence to support Plaintiffs' argument."  Judge v. Susee, No. 05-214 (PAM/JSM), 2006 WL 463534, at *7 (D. Minn. Feb. 24, 2006) (citing Rodgers v. City of Des Moines, 435 F.3d 904 (8th Cir. 2006) (explaining that the Court "will not mine a summary judgment record searching for nuggets of factual disputes to gild a party's arguments")).   Nevertheless, having reviewed the record before it, the Court finds that the circumstantial evidence upon which Plaintiffs rely is not sufficient to create a genuine dispute of material fact as to whether Defendant Jennifer Hegg made a defamatory statement to Ms. Smrekar on either January 7 or January 9, 2012 regarding Plaintiff Besett allegedly sexually assaulting L.H.  As such, the Court finds that Defendants' motion for summary judgment as to these two claims should be granted because Plaintiffs have failed to create a genuine issue of material fact.

Likewise, there is no evidence in the record that Defendant Shawn Hegg made any statements whatsoever to Ms. Smrekar on either January 7 or January 9, 2012.  Indeed, Defendant Shawn Hegg testified in his deposition that prior to L.H.'s report, he had never heard of Ms. Smrekar and even after the report he had not spoken to her.  (Shawn Hegg Dep. 140:7-13, October 28, 2011 [Docket No. 122, Ex. 1 at 11).  Nor is there any evidence in the record that any statement was made by Defendants Shawn Hegg or Jennifer Hegg to Ms. Smrekar on either of those dates regarding Plaintiff Tiffany Hegg.  In her deposition, though the question was related to the report of a sexual assault, Plaintiff Tiffany Hegg acknowledged that all of the allegedly false reports of abuse of a child were against Plaintiff Besett.  (Tiffany Hegg Dep. 129:11-20,

September 28, 2011 [Docket No. 122, Ex. 1 at 20]).  Thus, to the extent that Plaintiffs assert

claims of defamation about Plaintiff Tiffany Hegg, Defendants' motion for summary judgment

should also be granted on the Plaintiffs' claims that defamatory statements were published by

Defendants to Ms. Smrekar on January 7 and 9th, 2009.

### 2.   Plaintiffs' claims that Defendants made defamatory statements after January 9, 2009

In light of the confusing and unclear manner in which Plaintiffs argued in their written

memorandum in opposition to the motion the basis for their claim that Defendants "repeated

their defamatory statements" after January 9, 2009, at the hearing on the motion for summary

judgment, the Court required Plaintiffs' counsel to specifically identify the independent

communications he believed supported the defamation claims in paragraphs 212 and 216 of the

Amended Complaint.  Plaintiffs identified only the following communications: 1) a letter

purportedly written by Jennifer Hegg's mother, Betty Osberg, on January 7, 2011, (see Aff. of

Chmielewski, Ex. 5 at 24); 2) a letter from Heather Hallett dated August 7, 2011, (see id., Ex. 6

at 9); 3) an email from Jennifer Hegg to Karen Johnson, (see id., Ex. 3 at 1); 4) information

provided to Stephanie Baumgardner during a mental health consultation for L.H., (see id., Ex. 3

at 3); 5) Jennifer Hegg's affidavit filed in a state family court proceeding related to custody, (see

id., Ex. 6 at 7); 6) Shawn Hegg's affidavit filed in a state family court proceeding related to

custody, (see id., Ex. 6 at 1); 7) a six-page "log report" listing of alleged communications made

from 2006 to 2009, (see id., Ex. 7 at 12-18); 8) statements made by Shawn Hegg during his

testimony in a Minnesota Department of Human Services administrative proceeding on July 17,

2009, (see id., Ex. 4 at 16-17); and 9) statements made by Jennifer Hegg during her testimony in

a Minnesota Department of Human Services administrative proceeding on July 17, 2009, (see

id., Ex. 4 at 18-19).  Generally, the republication of defamatory words may be the basis of a

defamation claim.  See Price v. Viking Press, Inc., 625 F. Supp. 641, 644-45 (D. Minn. 1985)

("[u]nless protected by a privilege, defendants are as liable for republication of a defamatory

statement as if they had made the statement themselves.").  Here, however, the Court finds that

Defendants are entitled to summary judgment on all of these claims for defamation because

Plaintiffs have failed to establish a genuine dispute of material fact to support actionable claims

for defamation asserting that Defendant Shawn Hegg or Jennifer Hegg repeated, on the occasions

listed above, the alleged defamatory statement that Plaintiff Besett sexually assaulted L.H.

First, the statements made by Shawn and Jennifer Hegg in the affidavits they submitted in

the state family court proceeding in the Ninth Judicial District Court in the State of Minnesota

plainly cannot be the basis for a defamation claim.  The Minnesota Supreme Court long ago

explained that, with only certain limited exceptions, statements "published in the due course of a

judicial proceeding [are] absolutely privileged and will not support a civil action for defamation

[even if] made maliciously and with knowledge of its falsehood."  Matthis v. Kennedy, 67

N.W.2d 413, 417 (Minn. 1954).  Such privilege extends to "the judge, the jury, the party or

parties, counsel, and witnesses."  Id.  Here, the statements made by Shawn and Jennifer Hegg in

their affidavits submitted in state court were related to the proceeding to modify custody of their

children and were subject to absolute privilege.  Thus, to the extent that Plaintiffs argue that

Defendants repeated their alleged defamatory statements in these affidavits, they cannot now be

the basis for a defamation claim.

Second, the statements made by Shawn and Jennifer Hegg as part of their testimony in

what appears to be an administrative appeal by Plaintiff Besett to the Minnesota Department of

Human Services cannot be the basis of a defamation claim.  As explained by the Court in

<u>Matthis</u>, "[i]n judicial proceedings the privilege is not restricted to trials but includes every proceeding of a judicial nature if the hearing is before a competent court or before a tribunal or officer clothed with judicial or even quasi-judicial powers." <u>Id.</u> It is clear that the testimony at issue was given as part of an appeal raised by Plaintiff Besett before the Minnesota Department of Human Services. (<u>See</u> Aff. of Chmielewski, Ex. 4 at 16-19). At the hearing on the motion for summary judgment, Plaintiffs' counsel provided that the purpose of the Minnesota Department of Human Services hearing was to appeal the Human Services' determination that Plaintiff Besett had sexually assaulted L.H. Plaintiffs' counsel also provided that an administrative law judge presided over the proceeding and the witnesses were sworn under oath, with an opportunity for cross-examination. Clearly, this proceeding, which was labeled as an appeal and required recorded testimony, falls, at the very least, within the definition of a "hearing . . . before a tribunal or officer clothed with judicial or **even quasi-judicial powers**." (emphasis added). As such, any statements made by Defendants in their testimony as part of the appeal before the Minnesota Department of Human Services, a quasi-judicial proceeding, relating to their involvement with L.H. or Plaintiffs are also privileged and cannot now be the basis of a defamation claim.

Third, the letter purportedly written by Jennifer Hegg's mother, Betty Osberg has not been properly authenticated. It is well-established that "unauthenticated documents cannot be considered in a motion for summary judgment." <u>Orr</u>, 285 F.3d at 773. Counsel's mere representation that the letter attached to his affidavit is a "true and correct" copy is insufficient to authenticate the letter, and there is no testimony from Betty Osberg in the record to authenticate the letter. <u>See id.</u> at 777-78 (holding that various memos and letters were not authenticated, even though copies were attached to the attorney's affidavit, because no testimony was introduced

from the document author providing that they wrote the document, and explaining that the attorney's affidavit does not lay foundation for the documents because he neither wrote them nor witnessed the author do so); United States v. Dibble, 429 F.2d 598, 602 (9th Cir. 1970) ("A writing is not authenticated simply by attaching it to an affidavit, even if the writing appears on its face to have originated from some governmental agency and the affiant is a government official. The foundation is laid for receiving a document in evidence by the testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document and, where appropriate, its delivery.").  For the exhibits to be admissible "the affiant must be a person through whom the exhibits could be admitted into evidence." Rill v. Trautman, 950 F. Supp. 268, 269 (E.D. Mo. 1996).  Here, Mr. Chmielewski has provided no facts demonstrating that he would be able admit the letter.  Additionally, the letter contains hearsay statements.  Hearsay evidence is inadmissible unless it falls within one of the hearsay exceptions. "When an affidavit contains an out-of-court statement offered to prove the truth of the statement that is inadmissible hearsay, the statement may not be used to support or defeat a motion for summary judgment." Brooks v. Tri-Systems, Inc., 425 F.3d 1109, 1111 (8th Cir. 2005). Although Plaintiffs have not only failed to identify the specific statements in the letter they believe would support a defamation claim, Plaintiffs have failed even to articulate any basis for why any of the statements made in the letter would fall within any hearsay exception, and the Court finds that the letter is inadmissible hearsay.  See Novotny v. Tripp County, S.D., 664 F.3d 1173, 1178 (8th Cir. 2011) (explaining that the letters sought to be "integrated into the record by plaintiff's counsel's affidavit" contained statements of facts that were inadmissible hearsay insufficient to defeat summary judgment).

Furthermore, the Osberg letter is not written by Defendant Jennifer Hegg or Defendant Shawn Hegg, and any statements within the letter cannot constitute a basis for an independent claim of defamation against Defendant Jennifer Hegg.  Moreover, even if the Court were to consider the statements in the letter, they provide no information that Defendants defamed Plaintiffs.  The letter only mentions that Defendants reported "their suspicions" pertaining to L.H's comments of sexual assault but provides no date on when such communication was made, to whom it was made, and, more importantly, the content of any alleged communication.  Thus, any claim of defamation on the basis of the content of the Osberg letter, even if admissible, must fail.  Finally, at the motion hearing, Plaintiffs' counsel argued that because the letter suggests that Ms. Osberg was at least aware of sexual abuse, it could be inferred that her knowledge could have come only from defamatory statements made by Defendants to Ms. Osberg at another time.  Such speculative reasoning has no support in the record whatsoever, and Plaintiffs have entirely failed to even allege any specifics as to the content of or when such a defamatory statement might have taken place.

Fourth, the letter purportedly written by Ms. Heather Hallett on August 7, 2011 stating "[w]hat [she] know[s] of Tiffany" and "[w]hat [she] know[s] of Anthony," for the same reason as the letter written by Betty Osberg, fails to establish admissible evidence of defamation.  It has not been properly authenticated and contains hearsay statements.  Moreover, none of the statements made in the letter demonstrate that either of the Defendants repeated a defamatory statement to Ms. Hallett at any specific time.  In fact, the focus of the letter is Ms. Hallett's relationship with the Plaintiffs.

Fifth, the February 23, 2009 email sent from Jennifer Hegg to Karen Johnson has also not been properly authenticated and appears to include only hearsay statements made by L.H. or one

21

of the other children, as every sentence begins with "the boys said" or "L.H." said.  Furthermore, even if admissible, none of the statements provide that Plaintiff Besett had sexually assaulted L.H., but rather, they pertain to the reactions and conversations the children had with Plaintiffs after January of 2009.  At the hearing, Plaintiffs' counsel argued that instead of defaming Plaintiff Besett for sexual assault, the email appeared to defame Plaintiff Tiffany Hegg by asserting that she was assisting in covering up a sexual abuse crime, that she was tampering with witnesses, and causing fear and physical illness to L.H.  The statements in Defendant Jennifer Hegg's email stated no such thing, however, and were merely recounting, through the words of the children, the alleged conversation that took place between Plaintiffs and the children after L.H. made his January 9, 2009, report to Ms. Smrekar.  Moreover, these purported claims of defamation are once again beyond the scope of the allegations in the Amended Complaint such that Defendants repeated the alleged defamatory statements of sexual abuse of L.H. by Plaintiff Besett.  Thus, none of the hearsay statements in the unauthenticated email, even if admissible, provide support for a claim that either Defendant defamed either Plaintiff.

Sixth, the purported assessment and counseling services report made on February 17, 2009 by Stephanie Baumgardner has not been properly authenticated.  Although Mr. Chmielewski once again represents that it is a "true and correct" copy of the report, he fails to provide any facts demonstrating that he has personal knowledge of the report or that such reports are kept in the ordinary courts of business.  Dibble, 429 F.2d at 602 ("A writing is not authenticated simply by attaching it to an affidavit, even if the writing appears on its face to have originated from some governmental agency and the affiant is a government official. The foundation is laid for receiving a document in evidence by the testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document

and, where appropriate, its delivery.").  Nor has Mr. Chmielewski cited to any testimony from another witness with personal knowledge of the report to authenticate it.  Thus, the Court finds that Plaintiffs have failed to demonstrate a genuine dispute of material fact exists on the present record to save from summary judgment their claim that Defendants defamed them to Ms. Baumgardner.

Finally, Plaintiffs' counsel argued at the hearing on the motion for summary judgment that the purported "log report" list, allegedly created by Defendants themselves, contains numerous defamatory statements that were communicated to Ms. Baumgardner.  Plaintiffs, however, have failed to provide any admissible evidence demonstrating the actual publication of the "log report" itself.[7]  Thus, even if any of the statements in the "log report" could be considered defamatory, Plaintiffs have failed to demonstrate that the defamatory statements were ever published by Defendants to a third-party.  Furthermore, the document itself has once again not been properly authenticated,[8] contains hearsay statements, and it is thus inadmissible evidence.[9]

For all of the reasons stated above, the Court finds that the claims of republication of alleged defamation discussed by Plaintiffs at the hearing on the motion cannot survive summary

---

[7] The only purported publication of the "log report" in the record now before this Court appears to be to Ms. Baumgardner, as described in Ms. Baumgardner's report, which the Court has already found to be inadmissible for lack of foundation.

[8] In reviewing the testimony of Defendant Shawn Hegg, it appears that he identified the document as something he and Jennifer created.  (Shawn Hegg Dep. 88:16-89:25, Oct. 28, 2011 [Aff. of Brian Chmielewski, Ex. 2 at 8]).  However, because Plaintiffs' counsel failed to provide a copy of the exhibit Shawn Hegg testified to, the Court cannot be certain that it is the same document identified in the deposition.

[9] The Court also notes that handwriting on the document, though unclear as to who the author is, provides that the log report was submitted in 2009 as a responsive affidavit in a state family court proceeding.  As already discussed above, any statements directly made in a document submitted as part of the state family court proceeding could not be a basis for defamation because they are subject to absolute immunity.

judgment because Plaintiffs have failed to provide admissible evidence that would create a

genuine dispute of material fact.[10]

**B.  Plaintiffs' claim for knowing and reckless reporting in violation of Minn.**

**Stat. § 626.556**

Plaintiffs allege that "the reporting by Jennifer Hegg and Shawn Hegg of alleged abuse

by Anthony Besett of L.H. was not done in good faith and was done knowingly and recklessly

with complete disregard for the rights of Plaintiffs."  (Am. Compl. ¶ 251).

Minn. Stat. § 626.556, subd. 5 states as follows:

Any person who knowingly or recklessly makes a false report under the
provisions of this section shall be liable in a civil suit for any actual damages

---

[10] At the hearing, Plaintiffs' counsel also argued that Defendants emailed Karen Johnson to report an incident in which, while L.H. and Defendants were in a garage, L.H. reported a sexual incident with Plaintiff Besett.  When asked where admissible evidence could be found in the record to support such a claim, Plaintiffs' counsel directed the Court to Defendant Jennifer Hegg's testimony found in Exhibit I to his Affidavit.  Upon review of the transcript from Jennifer Hegg's testimony, however, it appears that Jennifer Hegg made no mention of an incident involving a report by L.H. while Defendants and L.H. were in the garage—much less that such a report was then made by email to Karen Johnson.  (See Aff. of Brian Chmielewski, Ex. 3 at 18-19).  In Defendant Shawn Hegg's testimony from the same hearing, he references an incident in which, while Defendants and L.H. were in the garage, L.H. reported a sexual incident with Plaintiff Besett.  (See Aff. of Brian Chmielewski, Ex. 3 at 16-17).  As part of his testimony, Defendant Shawn Hegg provided that he typed up what L.H. told him in an email and sent it to one of the social workers (either Karen Johnson or Rande Woodrum).  (Id. at 17).  The testimony, however, does not provide the specific statements that Defendant Shawn Hegg made in the email, and when it was sent; and, as such, fails to include evidence in the record as to the required minimum elements of a defamation claim.  Furthermore, even though the formal criminal proceedings against Plaintiff Besett appear to not have been initiated until February 2, 2009, (see Aff. of Brian Chmielewski, Ex. 5 at 3), any statements made to the social services agency after the report of sexual abuse by L.H. were part of the ongoing investigation led by the county social services agency, as required by Minn. Stat. § 626.556 subd. 10, and could not arguably be the basis of a defamation claim.  See Matthis, 67 N.W.2d at 417 ("[i]n judicial proceedings the privilege is not restricted to trials but includes every proceeding of a judicial nature if the hearing is before a competent court or before a tribunal or officer clothed with judicial or even quasi-judicial powers."); Connolly v. Stone, 807 So.2d 979, 982 (La. Ct. App. 2002) (finding that allegedly defamatory statements could not be the basis of a defamation claim because they were made during an investigation by an administrative agency who was exercising a quasi-judicial function); Dairy Stores, Inc. v. Sentinel Pub. Co., Inc., 516 A.2d 220, 226 (N.J. 1986) ("[c]ertain statements, such as those made in judicial, legislative, or administrative proceedings, are absolutely privileged because the need for unfettered expression is crucial to the public weal.").  Minn. Stat. § 626.556 provides the complex process that the social services agency was required to undertake and also states that "[w]hen necessary the local welfare agency shall seek authority to remove the child from the custody of a parent, guardian, or adult with whom the child is living" and "[i]n performing any of these duties, the local welfare agency shall maintain appropriate records."  Furthermore, "[a]fter conducting an investigation, the local welfare agency shall make two determinations: first, whether maltreatment has occurred; and second, whether child protective services are needed."  Minn. Stat. § 626.556 subd. 10e (c).  The Court finds that the proceedings are those of an administrative agency and ones upon which the agency had to make certain determinations with respect to the alleged sexual abuse, (see Aff. of Brian Chmielewski, Ex. 5 at 21), and, as such, fall within the quasi-judicial absolute privilege.

suffered by the person or persons so reported and for punitive damages set by the court or jury, plus costs and reasonable attorney fees.

Because the analysis of whether Defendants defamed Plaintiff Besett in the conversation with Ms. Smrekar hinged on whether Defendants even stated to Ms. Smrekar that Plaintiff sexually assaulted L.H., the Court's analysis in section III.A., above is equally applicable to the essential question under this statutory claim: whether Defendants made a report to Ms. Smrekar on either January 7th or 9th, 2009 that Plaintiff Besett sexually assaulted L.H.  In discussing the defamation claim, the Court has already found that there is an absence of direct evidence that Defendants made any report to Ms. Smrekar that Plaintiff Besett sexually assaulted L.H.  To the contrary, the report, Ms. Smrekar, and Defendant Jennifer Hegg all provide that L.H. himself (and not Defendants) made the report to Ms. Smrekar.

The only question that remains is whether the circumstantial evidence in the record creates a genuine dispute of material fact that Defendants made a report to Ms. Smrekar. Plaintiffs again argue that circumstantial evidence supports the claim that Defendant Jennifer Hegg made a report of sexual abuse of L.H. by Plaintiff Besett to Ms. Smrekar.  (Pls.' Resp. in Opp'n to Defs.' Mot. for Summ. J.at 29) (citing Northern States Power Co. v. Lyon Food Products, Inc., 229 N.W.2d 521, 525 (Minn. 1975)).  They argue that the following circumstantial evidence establishes that Defendants made a report to Ms. Smrekar:

> 1) "Jennifer and Shawn state that they talked on the night that L.H. allegedly reported to them and decided to call the school and not a local welfare agency to make their report";
> 2) "Jennifer had worked at the school and has ties to the school";[11]
> 3) "Jennifer says that she called the school and that they were transferred to Smrekar";
> 4) Jennifer has stated that she does not remember the substance of the conversation;
> 5) "Jennifer was in Smrekar's office when L.H. allegedly make [sic] his report of abuse";
> 6) Jennifer does not remember specifics about what happened while in the office;
> 7) "the timing of the making, sending and receiving of the reports, the language in the reports, the inability of the child to repeat the report content without being lead [sic] confirm the Plaintiff's characterization of events";

---

[11] Plaintiffs cite no evidence in the record for this proposition.

8) "The 1/9 interview was not recorded. L.H. did not report anything on 1/7 and when Jennifer was present on 1/9, L.H. suddenly is able to tell the same story";
9) "On 1/12, during the audio-taped interview, L.H. cannot provide much detail and only does so with substantial leading by the interviewers;"
10) by not admitting that they made the report, Defendants are concealing material facts and engaging in fraud.

(Pls.' Resp. in Opp'n to Defs.' Mot. for Summ. J. at 29-31).  Once again, Plaintiffs failed to include citation to the record for any of these assertions leaving the Court to comb through the exhibits to find any possible nuggets of evidence that may support the Plaintiffs' assertions. Though the list of alleged circumstantial evidence is more exhaustive than the reasons offered by Plaintiffs in support of the defamation claim, the reasons offered still fail to create a genuine dispute of material fact that Defendant Jennifer Hegg (or Defendant Shawn Hegg for that matter) made an independent report to Ms. Smrekar that Plaintiff Besett sexually abused L.H.

First, with respect to Plaintiffs' argument that L.H. failed to provide the same level of detail in subsequent interviews as he did on January 9, 2009, the Court again finds that the transcript of a January 12, 2009, interview (presumably upon which Plaintiffs rely) constitutes inadmissible evidence.  But even if it were admissible, the alleged failure of a five-year old child to repeat the same level of detail in a subsequent proceeding is not alone sufficient circumstantial evidence to create a genuine dispute of material fact that Defendant Jennifer Hegg herself as opposed to L.H. made the original report of alleged sexual abuse to Ms. Smrekar.

Second, Plaintiffs' argument that by not admitting she made a report Defendant Jennifer Hegg was concealing material facts and thus perpetrating a fraud is circular logic at best. There is an absence of any evidence identified in the record that Defendants were concealing facts rather than merely disputing the facts Plaintiffs wished to demonstrate.

Third, as explained in the defamation discussion, Defendant Jennifer Hegg's mere presence at the time of L.H.'s report and the fact that she previously called Ms. Smrekar to

schedule an appointment do not create a genuine dispute of material fact that Defendant Jennifer

Hegg herself made a report of sexual abuse actionable under Minn. Stat. § 626.556.

Because the Court finds that no genuine dispute of material fact exists as to whether

Defendant Jennifer Hegg (or Defendant Shawn Hegg for that matter) independent of L.H. made a

false report of sexual abuse to Ms. Smrekar, the Court need not determine whether any factual

dispute exists as to whether any such report would have been made in good faith. <u>See generally,</u>

<u>Celotex Corp.</u>, 477 U.S. at 323 (a failure of proof concerning an essential element of the

nonmoving party's case renders all other facts immaterial).

Furthermore, as in the claim for defamation, Plaintiff Tiffany Hegg has failed to present

any evidence demonstrating that any reporting pertaining to her specifically was ever made by

either Defendant to Ms. Smrekar.  Indeed, she acknowledged in her deposition that Ms.

Smrekar's January 9, 2009 report did not indicate or imply that she had engaged in any kind of

abuse.  (Tiffany Hegg Dep. 128:11-128:17, Sept. 28, 2011 [Docket No. 122, Ex. 1at 19]).[12]

Finally, with respect to whether Defendant Shawn Hegg made any reckless report,

Plaintiffs appear to argue that because "Shawn and Jennifer developed their plan . . . together –

and agreed on a course of action," Defendant Shawn Hegg is equally culpable of making the

alleged report.  (Pls.' Resp. in Opp'n to Defs.' Mot. for Summ. J.at 34).  Their "theory of the

---

[12] Plaintiffs appeared to argue in conclusory fashion in their memorandum in opposition to the motion for summary judgment that other reports made in 2007 and one made to Wadena County Social Services, purportedly reporting "Tiffany for neglect," could serve as a basis for a reckless reporting claim under the statute.  (<u>See</u> Pls.' Resp. in Opp'n to Defs.' Mot. for Summ. J. at 31).  The only false reporting alleged in the Amended Complaint, however, pertained to the "alleged abuse by Anthony Besett of L.H." (Am. Compl. ¶ 251).  As explained by the Court's earlier discussion that communications prior to January 7, 2009 cannot serve as a basis for an independent defamation claim, Plaintiffs cannot now argue that every single communication made by Defendants could be an actionable basis under Minn. Stat. § 626.556.  Plaintiffs are limited to the false report alleged in the Amended Complaint, which the Court analyzed in finding that the claim was not futile.  (<u>See</u> Report and Recommendation at 17-19) (analyzing whether the report made to Ms. Smrekar was a futile claim).  Furthermore, the purported child neglect report, which is actually a letter from Wadena County Social Services advising Defendant Shawn Hegg that pursuant to their investigation as mandated by Minn. Stat. § 626.556 they found no child neglect by Plaintiff Tiffany Hegg, does not provide that either Defendant made a report of child neglect; instead it appears, as provided in the letter, that the investigation was undertaken based on the mandate of Minn. Stat. § 626.556.  (<u>See</u> Aff. of Brian Chmielewski, Ex. 5 at 21).

claim" appears to apparently be at best that Shawn Hegg supported an attempted report.  (See Pls.' Resp. in Opp'n to Defs.' Mot. for Summ. J. at 34) ("Shawn may not have pulled the trigger, but he certainly helped buy the gun and load it with ammunition.").  Plaintiffs have failed to cite any authority, however, that allegedly planning to make a report alone under Minn. Stat. § 626.556 is actionable.  The statute, on its face, appears to apply only to reports that are actually made.  See Minn. Stat. § 626.556 subd. 5 ("[a]ny person who knowingly or recklessly **makes** a false report under the provisions of this section . . . ." (emphasis added)).  As such, even if Plaintiffs had created a genuine dispute of material fact that Defendant Jennifer Hegg made a report to Ms. Smrekar, they have failed to provide evidence in the record that would raise a genuine dispute of material fact that Defendant Shawn Hegg made any report whatsoever to Ms. Smrekar.

Thus, the Court finds that Defendants are entitled to summary judgment on this claim.[13]

## 1.   Whether Defendants are entitled to attorney's fees under Minn. Stat. § 626.556

Defendants request attorney's fees for defending against the reporting claim.  (Def. Shawn and Jennifer Hegg's Mem. of Law in Supp. of Mot. for Summ. J. at 14).

---

[13] In its prior report and recommendation, the Court did not make a determination as to whether Ms. Smrekar even fell within the definition of an agency that is responsible for investigating or assessing a report of child abuse such as to make the alleged report actionable under Minn. Stat. § 626.556.  (Report and Recommendation at 19).  In this motion, Defendants did not make any argument on the issue but rather asserted that "[a]ssuming that any report made to Smrekar would constitute a report . . . under Minn. Stat. § 626.556 subd. 3(b), no liability can lie against Shawn or Jennifer because neither Shawn nor Jennifer actually made a report to Smrekar."  (Defs.' Shawn and Jennifer Hegg's Mem. of Law in Supp. of Mot. for Summ. J. at 11).  Similarly, Plaintiffs did not argue that Ms. Smrekar fell within the definition of an agency provided in Minn. Stat. § 626.556 subd. 3(b).  To the contrary, in arguing that Defendants were not entitled to the immunity provision of the statute, Plaintiffs curiously argued that the "reports against plaintiffs were not made to a welfare agency, agency responsible for assessing or investigating the report, police department, or the county sheriff," (Pls.' Resp. in Opp'n to Defs.' Mot. for Summ. J. at 34), which in addition to negating any possible immunity for Defendants' would also appear to defeat the very basis of their Minn. Stat. § 626.556 claim.  However, because the Court finds that no genuine dispute of material fact exists as to whether a report was even made, it need not decide the issue of whether any report would fall within the scope of Minn. Stat. § 626.556.

The statute provides that "[i]f a person who makes a voluntary or mandatory report under subdivision 3 prevails in a civil action from which the person has been granted immunity under this subdivision, the court may award the person attorney fees and costs."  Minn. Stat. § 626.556, subd. 4(d).  Without providing any citation, Defendants argue that "[i]f the statute allows attorney fees for prevailing in an action based upon a report made with reasonable belief and in good faith, certainly [it] should apply to an action where no report was made at all."  (Defs.' Mem. of Law in Supp. of Mot. for Summ. J. at 15).

In response, Plaintiffs argue that Defendants have not prevailed on their claim for immunity and are thus not entitled to attorney's fees under the statute.  (Pls.' Resp. in Opp'n to Defs.' Mot. for Summ. J. at 38).  They further argue that Defendants' motion was "insincerely filed, resulting in substantial additional cost to the Plaintiffs to file the instant response," and request that the Court award Plaintiffs $6,900.00 in attorney fees for "the burden created by the Heggs meritless motion for summary judgment."  (Id.)

The attorney's fees provision in the statute, on its face, applies only once the Court has determined that a report has been made and that Defendants are entitled to immunity.  Here, the Court has found that there is no genuine dispute of material fact that any report was made, it therefore, has not made a determination that Defendants would have been entitled to immunity under Minn. Stat. § 626.556 based on a good faith report.  Although Defendants argument is somewhat compelling, Defendants have not directed the Court to any authority, and the Court has found none, that permit it to award attorney's fees under Minn. Stat. § 626.556 without necessarily first holding that Defendants are entitled to immunity under the statute.

As to Plaintiffs' request for attorney's fees, because the Court recommends granting Defendants' summary judgment motion, it finds that Plaintiffs are not entitled to recover attorney's fees in responding to the motion for summary judgment.

### C.  Plaintiffs' claim for Negligent Infliction of Physical and Emotional Distress

In its prior report and recommendation, the Court found that Plaintiffs' claim for negligent infliction of emotional distress against Defendants Shawn and Jennifer Hegg could survive because Plaintiffs had stated a plausible claim for defamation in its complaint at least. (Report and Recommendation at 34) ("the Court will permit Plaintiffs to assert a claim for the negligent infliction of emotional distress against the Hegg Defendants, since the Court has already determined that Plaintiffs have stated a claim for defamation.").

In the Amended Complaint, Plaintiffs allege that:

[b]y the act of publishing defamatory statements, restating those false and defamatory statements, negligently or failing to investigate the veracity of the defamatory statements, claiming probable cause based on unverified allegations, publicizing the criminal charge of sexual assault, allowing criminal charges to be filed and criminal proceedings to ensure and other unreasonable acts, Defendants intended to cause Plaintiffs to suffer emotional distress.

(Am. Compl. ¶ 254).

Both parties appear to agree that the claim for negligent infliction of emotional distress hinges on whether the Plaintiffs' claim for defamation survives summary judgment.  (See Defs.' Mem. of Law in Supp. of Mot. for Summ. J. at 15) ("Plaintiffs cannot maintain an action for Negligent Infliction of Emotional Distress because Plaintiffs cannot establish a claim for Defamation."); (Pls.' Resp. in Opp'n to Defs.' Mot. for Summ. J. at 40) ("if the Plaintiffs' defamation action stands, they may assert negligent infliction of emotional distress.  Otherwise, there is no basis for the cause of action under these facts.").

Having found that Plaintiffs' have failed to establish a genuine dispute of material fact to support their claims for defamation, the Court finds that Plaintiffs' claim for negligent infliction of physical and emotional distress must also be dismissed.

## IV.   DEFENDANTS' REQUEST FOR ATTORNEY'S FEES DUE TO THE RESCHEDULING OF THE HEARING

Defendants' motion for summary judgment was originally scheduled to be heard on May 8, 2012 at 2:00 p.m. in the U.S. Courthouse in Fergus Falls, Minnesota. (See Notice of Hearing [Docket No. 130]). Shortly before the hearing, the undersigned was informed that Plaintiffs' counsel had mistakenly traveled to the U.S. Courthouse in Duluth, Minnesota. The Court rescheduled the hearing for May 9, 2012 at 4:00 p.m. in Duluth, Minnesota. At the hearing, Defendants' requested that they be awarded their reasonable fees in unnecessarily traveling to Fergus Falls on May 8, 2012. Plaintiffs' counsel acknowledged that an award of attorney's fees is appropriate because of his mistake and did not dispute that a reimbursement of travel expenses was appropriate. Defendants' counsel, Mr. Paul, stated to the Court that he spent 7 hours travelling to and returning from the originally scheduled hearing in Fergus Falls. In his affidavit in support of the motion, Mr. Paul also provided that his customary hourly billing rate was $200 per hour, which the Court finds to be reasonable. (Aff. of Christopher L. Paul [Docket No. 122] ¶ 10). The Court will grant Defendants' request for an award of attorney's fees and award $1,400 to be paid by counsel for Plaintiffs Tiffany Hegg and Anthony Besett to Defendants Shawn and Jennifer Hegg.

## V.   CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein,

31

**IT IS HEREBY RECOMMENDED** that Defendants' Motion for Summary

Judgment [Docket No. 119] be **GRANTED**.


Dated: July 31, 2012                              s/Leo I. Brisbois
                                                  LEO I. BRISBOIS
                                                  United States Magistrate Judge


### N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by August 14, 2012**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.